**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **ROYAL HOSPITALITY CORP.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **UNDERWRITERS AT LLOYD'S,** | § | **JURY REQUESTED** |
| **LONDON SUBSCRIBING TO** | § | |
| **POLICY NUMBER W1E467190101,** | § | |
| **BEAZLEY LLOYD'S SYNDICATE** | § | |
| **2623, BEAZLEY LLOYD'S** | § | |
| **SYNDICATE 623, LIBERTY** | § | |
| **SURPLUS INSURANCE** | § | |
| **CORPORATION, HALLMARK** | § | |
| **SPECIALTY INSURANCE** | § | |
| **COMPANY, UNDERWRITERS AT** | § | |
| **LLOYD'S LONDON SUBSCRIBING** | § | |
| **TO POLICY NUMBER** | § | |
| **93PRX17EEF8, LLOYD'S OF** | § | |
| **LONDON NOVAE 2007** | § | |
| **SYNDICATE, AND HOMELAND** | § | |
| **INSURANCE COMPANY OF NEW** | § | |
| **YORK,** | § | |
| *Defendants.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Royal Hospitality Corp. ("Royal Hospitality"), Plaintiff herein, files this Original

Complaint against Defendant Underwriters at Lloyd's, London Subscribing to Policy Number

W1E467190101 ("Lloyd's W1E467190101"), Beazley Lloyds Syndicate 2623 ("Beazley 2623"),

Beazley Lloyd's Syndicate 623 ("Beazley 623"), Liberty Surplus Insurance Corporation ("Liberty

Surplus"), Hallmark Specialty Insurance Company ("Hallmark Specialty"), Underwriters at

Lloyd's London Subscribing to Policy Number 93PRX17EEF8 ("Lloyd's 93PRX17EEF8"),

Lloyd's of London Novae 2007 Syndicate ("Novae 2007"), and Homeland Insurance Company of

New York ("Homeland"), (collectively referred to as "Defendants"), and, in support of Plaintiff's causes of action, Plaintiff would respectfully show the Court the following:

**I.**
**THE PARTIES**

1.     Royal Hospitality Corp. is a Delaware corporation which is the named insured on various insurance policies covering property in the State of Texas.

2.     **Lloyd's W1E467190101** is an insurance company doing business in the State of Texas. Upon information and belief, service of process may be made upon Messrs Mendes & Mount, LLP, 750 Seventh Avenue, New York, New York, 10019-6829.

3.     **Beazley 2623** is an insurance company doing business in the State of Texas. Upon information and belief, service of process may be made upon Messrs Mendes & Mount, LLP, 750 Seventh Avenue, New York, New York, 10019-6829.

4.     **Beazley 623** is an insurance company doing business in the State of Texas. Upon information and belief, service of process may be made upon Messrs Mendes & Mount, LLP, 750 Seventh Avenue, New York, New York, 10019-6829.

5.     **Liberty Surplus** is an insurance company doing business in the State of Texas. Upon information and belief, service of process may be made upon Corporation Service Company at 40 Technology Parkway South, #300, Norcross, GA 30092.

6.     **Hallmark Specialty** Insurance Company is an insurance company doing business in the State of Texas. Upon information and belief, service of process may be made upon General Counsel Hallmark Financial Services, Inc., 777 Main Street Suite #1000 Fort Worth, Texas 76102.

7.     **Lloyd's 93PRX17EEF8** is an insurance company doing business in the State of Texas. Upon information and belief, service of process may be made upon General Counsel, Hallmark Financial Services, Inc., 777 Main Street Suite 1000 Fort Worth, Texas 76102.

2

8.      **Novae 2007** is an insurance company doing business in the State of Texas. Upon information and belief, service of process may be made upon General Counsel Hallmark Financial Services, Inc., 777 Main Street Suite 1000 Fort Worth, Texas 76102.

9.      **Homeland** is an insurance company doing business in the State of Texas. Upon information and belief, service of process may be made upon General Counsel One Beacon Insurance Group, Legal Department, 605 North Highway 169 Suite 800 Plymouth, MN 55441.

## II.
## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this suit because there is diversity of citizenship under 28 U.S.C. §1332(a)(1) and the amount in controversy exceeds $75,000.00 exclusive of interests and costs. Plaintiff reserves the right to modify the amount and type of relief sought in the future.

11.     Venue is proper in this judicial district under 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district and a substantial part of the property that is the subject of the action is situated in this district.

## III.
## FACTUAL BACKGROUND

12.      Royal Hospitality Corp. owns and/or operates various Church's Chicken Restaurants throughout the Texas area, including 54 Church's Chicken Restaurants that are the subject of this suit ("the Properties").

13.     In order to protect the Properties, Plaintiff purchased several commercial insurance policies. Plaintiff retained its primary level of coverage through a commercial property policy which was issued by Lloyd's W1E467190101 and distributes coverage among Beazley 2623 and Beazley 623, under policy number W1E467190101. Additionally, Plaintiff purchased excess

coverage policies through Defendant Liberty Surplus (policy number 1000245579-01); Hallmark Specialty (policy number 73PRX17EEF7); Novae 2007 through Lloyd's 93PRX17EEF8 (policy number 93PRX17EEF8); and Homeland (policy number 795-000-58-84-0000) (collectively referred to as "the Policies"). Plaintiff paid its premiums for all such policies at the times required and at all times relevant to this lawsuit, maintained coverage through Defendants.  All of the policies at issue specifically covered damages caused by wind and/or a Hurricane.

14.     On or about August 25-29, 2017, Hurricane Harvey hit the coast of Texas, causing severe damage to homes and businesses throughout the area, including the Properties owned and/or operated by Plaintiff.  Specifically, the Properties sustained structural and/or exterior damage and water intrusion caused interior damages to the Properties. Plaintiff also sustained significant damage to its business personal property, including, but not limited to furniture, electronics, equipment and inventory. Likewise, the severity of Hurricane Harvey caused the Properties to be closed for the duration of the storm and the damages sustained thereafter rendered several locations inaccessible or inoperable for several days, weeks and/or months, depending on the location.

15.     As a result of the catastrophic damage caused by Hurricane Harvey, Plaintiff immediately filed a claim with Defendants on August 29, 2017, for damages to Plaintiff's real property, business personal property and business interruption loss.

16.     Plaintiff asked that the Defendants cover the cost of repairs to the Properties pursuant to the Policies, including but not limited to, repair and/or replacement of roofs and the repair of the exterior, structural, and interior water damages to the Properties. Plaintiff also sought damages for the business interruption and business personal property losses incurred as a result of Hurricane Harvey.

17.     Despite the clear evidence of covered damage, Defendant engaged in a cycle of tactics designed to either deny or delay payment on Plaintiff's claim for covered damages to the Properties. Defendant initiated the delay by first being largely nonresponsive and/or inundating Plaintiff with requests for an enormous amount of irrelevant documents. Ultimately, Defendants' improper investigation and mishandling of Plaintiff's claim resulted in the improper denial of Plaintiff's claim for covered damages to the Properties. In fact, as of this filing and seven (7) months after Hurricane Harvey, Plaintiff has yet to receive any payment for any of the covered damages to the Properties.

18.     After Plaintiff filed its claim for Hurricane Harvey damages, Defendants assigned McClarens as the adjusting company involved in adjusting Plaintiff's claim. Defendants and/or McClarens assigned Val Mansfield ("Mansfield") as the individual adjuster.  As discussed below, Mansfield was either inadequately trained or intentionally ignored the evident damages caused by Hurricane Harvey. Furthermore, Mansfield failed and refused to investigate the Properties within a reasonable time frame.

19.     In early September, 2017, Michael Fusco ("Fusco") the public adjuster representing Plaintiff contacted Mansfield to (1) discuss Plaintiff's demolition/mitigation plan and (2) coordinate inspections of the Properties.  Mansfield ignored Fusco's efforts and instead sent a massively overbroad document request, much of which was wholly irrelevant to the claim. Mansfield avoided Fusco's request to discuss scheduling inspections of the Properties.  Several days later, after hearing no response from Defendants, McClarens or Mansfield, Fusco informed Mansfield of Plaintiff's detailed plan to begin renovations and requested Mansfield to comment if the proposed renovation plan did not meet his approval.  However, neither Defendants, McClarens or Mansfield, responded to Plaintiff's proposed renovation plan.

20.     Rather than provide any feedback or response to Plaintiff's plan for renovations, Mansfield continued to insist on a voluminous, largely irrelevant, and overbearing list of information to assess Plaintiff's claim for business interruption losses.  In an effort to mitigate its damages, and for the health and safety of not only its employees, but its customers, Plaintiff began the demolition and repair process without any help from Defendants.  Defendants' repeated delays were causing health risks and damaging Plaintiff's business and Plaintiff had to act quickly.

21.     After successfully delaying inspections of the Properties for several weeks, Defendant finally sent building consultants to inspect the various Properties; however, it was clear to Fusco that the building consultants were not actually investigating the damages to the properties, but were instead on a mission to find any reason to deny and/or delay payment on Plaintiff's claim. The building consultants spent approximately 20 minutes at each property despite the fact that most properties had several hundred thousand dollars' worth of damage.  Moreover, the building consultants declined to create any estimates and/or reports memorializing their investigations. Typically, adjusters and/or building consultants spend a significant amount of time inspecting, photographing, and documenting a loss of this magnitude.  But, when Fusco requested the estimates and reports, he was informed that Defendants and their agents did not have any. It was clear to Fusco that Defendants' agents had no real intent to properly adjust Plaintiff's claim.  Their brief inspection was a pretext for their true efforts to figure out how to deny the claim.

22.     On October 12, 2017, approximately 6 weeks after Plaintiff filed its claim for damages, Defendants had yet to accept or deny Plaintiff's claim, prompting Plaintiff's request for an advance of the insurance proceeds. Once again, Defendant was nonresponsive for weeks before denying Plaintiff's request in early November.  At one point Fusco and Mansfield met in Dallas to discuss the claim.  Mansfield said that the only information he was waiting on was engineering

reports from engineers Defendants had hired.  He said nothing further was required of Plaintiff to adjust the claim.

23.     For the following months, Fusco continued to request information and/or payment on Plaintiff's claim. And, on January 24, 2018, consistent with its patterns and practices in this case, Defendants' adjuster notified Plaintiff that his investigation was ongoing but that no payment would be made on its claim because the damages fell below the deductible.

24.     To date, Defendants have continued to engage in unreasonable delay tactics to avoid proper payment on Plaintiff's claim. Plaintiff has continued to request advances and/or payment for Plaintiff's claim, all of which have been denied by Defendants. Ultimately, Defendants performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the Properties.

25.     Defendants refused to pay the full proceeds owed under the Policies, although due demand was made for proceeds to be paid in an amount sufficient to cover the damages to the insured Properties. The mishandling of Plaintiff's claim also caused delays in its ability to fully repair the Properties which has resulted in additional damages. To date, Plaintiff has not been paid anything for the damages to its Properties and Defendants continue to delay payment for the damages to the Properties.  Defendants' failure to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policies constitutes a breach of the insurance contracts between Defendants and Plaintiff.

26.     Insurance carriers, such as Defendants, often engage in delay tactics in order to acquire interest on monies at the expense of the insureds. Here, Defendants misrepresented to Plaintiff that damages to the Properties was not in excess of Defendants' flood and wind deductibles, when the damages were actually covered under the Policies, caused by a covered

occurrence, and clearly in excess of previously paid amounts.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(1).

27.     Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policies.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(2)(A).

28.     Defendants failed to explain to Plaintiff the reasons for their offer of an inadequate settlement, and for many of Plaintiff's damages, Defendants failed to affirm or deny coverage within a reasonable time.  Defendants' conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE §541.060(a)(3) and TEX. INS. CODE §541.060(a)(4).

29.     Defendants failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay.  Specifically, Defendants delayed full payment of Plaintiff's claim longer than allowed, and, to date, Plaintiff has not received full payment for its claim.  Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE §542.060.

30.     As a result of Defendants' wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firm representing Plaintiff with respect to these causes of action.

## IV.
## COUNTS

31.     Each of the foregoing paragraphs is incorporated by reference in the following:

**A.     Breach of Contract**

32.     Defendants had a contract of insurance with Plaintiff.  Defendants breached the

terms of those contracts by wrongfully denying and/or underpaying the claim and Plaintiff was damaged thereby.

**B.     Prompt Payment of Claims Statute**

33.     The failure of Defendants to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

34.     Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.     Bad Faith/Deceptive Trade Practices Act ("DTPA")**

35.     Defendants are required to comply with Chapter 541 of the Texas Insurance Code.

36.     Defendants violated Section 541.051 of the Texas Insurance Code by:

    (1)     making statements misrepresenting the terms and/or benefits of the policy.

37.     Defendants violated Section 541.060 by:

    (1)     misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

    (2)     failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

    (3)     failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

    (4)     failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

(5)  refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

38.  Defendants violated Section 541.061 by:

(1)  making an untrue statement of material fact; and

(2)  making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

39.  Defendants knowingly committed the acts complained of.  As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

## V.
## CONDITIONS PRECEDENT

40.  All conditions precedent to Plaintiff's right to recover have been fully performed, or have been waived by Defendants.

## VI.
## DAMAGES

41.  Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff. Accordingly, Plaintiff is seeking damages in excess of ten (10) million dollars.

42.  As previously mentioned, the damages caused by Hurricane Harvey have not been properly addressed or repaired in the months since, causing further damages to the Properties and causing undue hardship and burden to Plaintiff.  These damages are a direct result of Defendants' mishandling of Plaintiff's' claim in violation of the laws set forth above.

43.  For breach of contract, Plaintiff is entitled to regain the benefit of its bargain, which is the amount of its claim, together with attorney's fees.

44. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices and violations of the DTPA Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, consequential damages, mental anguish, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff asks for three times its actual damages. TEX. INS. CODE §541.152.

45. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of its claim, as well as interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE §542.060.

## VII.
## <u>ATTORNEYS' FEES</u>

46. Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendants and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

47. Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendants, and Defendants did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

48. Plaintiff further prays that it be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiff's causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VII.
## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that, upon final hearing of the case, Plaintiff recovers all damages from and against Defendants that may reasonably be established, and that Plaintiff be awarded attorneys' fees through trial and appeal, costs of court,

pre-judgment interest, post-judgment interest, and such other and further relief, general or special,

at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**DALY & BLACK, P.C.**

By: _____ /s/ *Richard D. Daly* _____
        Richard D. Daly
        TBA No. 00796429
        Federal Bar No. 20706
        rdaly@dalyblack.com
        ecfs@dalyblack.com
        John Scott Black
        TBA No. 24012292
        jblack@dalyblack.com
        2211 Norfolk St., Suite 800
        Houston, Texas 77098
        713.655.1405—Telephone
        713.655.1587—Fax

        **ATTORNEYS-IN-CHARGE
        FOR PLAINTIFF ROYAL
        HOSPITALITY CORP.**