United States District Court
Southern District of Texas
**ENTERED**
August 20, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROYAL HOSPITALITY CORP. | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–000102 |
| | § | |
| UNDERWRITERS AT LLOYD'S, et al. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me[1] are Defendant Hallmark Specialty Insurance Company's Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment (Dkt. 54) and Defendant AXIS Corporate Capital UK Limited, Successor in Interest to Novae Group PLC's Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment (Dkt. 59). The motions were referred to me by United States

---

[1] For the first 18 months of my judicial career, I wrote my judicial opinions in the third person, with repeated references to "the Court" or "the undersigned." After much reflection, I have decided to move away from the third person and write in the first person, a much more informal approach that is gaining traction in the judicial community.

As a complete aside, any discussion of the third-person reminds me of baseball superstar Rickey Henderson, who always used the third-person to refer to himself (for example: "Rickey's the best." "It's Rickey time."). My favorite Rickey Henderson story: After a long and storied career, Henderson joined in San Diego Padres in 1996. As Henderson boarded a team bus and looked for a place to sit, teammate Steve Finley reportedly told him: "You have tenure, sit wherever you want." Henderson stared at Finley and replied: "Ten years? Rickey's been playing at least 16, 17 years." True or not, it is a great story.

District Judge George C. Hanks, Jr. *See* Dkt. 67. After careful consideration of the motions, responsive briefing, and applicable law, I recommend that the motions be granted.

## BACKGROUND

The following account of the facts is taken from Plaintiff's Original Complaint and, for purposes of the pending motions, assumed to be true. Royal Hospitality Corp. ("Royal Hospitality") operates 54 Church's Chicken Restaurants in Texas (the "Properties"). To protect the Properties, Royal Hospitality purchased several commercial insurance policies. Royal Hospitality retained its primary level of coverage through a commercial property policy issued by Underwriters at Lloyd's, London. Excess coverage policies were provided by, among others, Hallmark Specialty Insurance Company ("Hallmark") and AXIS Corporate Capital UK Limited, Successor in Interest to Novae Group PLC ("AXIS") (collectively, the "Excess Carriers").

In August 2017, Hurricane Harvey hit the Texas coast, causing significant damage to the Properties. Royal Hospitality subsequently filed a claim with the primary insurer and Excess Carriers requesting payment for its damages. Those damages included the cost of repairs to the Properties and business interruption and business personal property losses incurred as a result of the hurricane. An adjuster hired to inspect the Properties informed Royal Hospitality that no payment would be made under the primary insurance policy because the covered damages fell below the deductible. Royal Hospitality strongly disputes that determination.

In April 2018, Royal Hospitality filed its Original Complaint, asserting causes of action against the primary insurer and Excess Carriers for breach of contract, violations of

Texas Insurance Code § 542 (Prompt Payment), and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act for unfair settlement practices and misrepresentations.

The Excess Carriers have moved to dismiss the lawsuit, arguing that all the causes of action fail because the Excess Carriers owe no duty to pay, adjust, or settle Royal Hospitality's claim until the limits of the primary policy have been exhausted.

### RULE 12(c) MOTION TO DISMISS STANDARD

"A motion brought pursuant to [Federal Rule of Civil Procedure] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks and citation omitted). The standard for judgment on the pleadings under Rule 12(c) is the same as the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*,

v. *Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

## ANALYSIS

### A. Breach of Contract Claim

Royal Hospitality alleges that the Excess Carriers breached the terms of the insurance policies at issue by wrongfully denying and/or underpaying its claim. In response, the Excess Carriers argue that the breach of contract claim must be dismissed because they owe no contractual obligation to make any payment until the primary insurance policy limits are exhausted.

Importantly, Royal Hospitality readily admits that it has yet to receive payment from any insurance carrier for the property damages it suffered from Hurricane Harvey. *See* Dkt. 1 at 7 ("To date, [Royal Hospitality] has not been paid anything for the damages to its Properties"). This admission is critical because the insurance policies at issue do not place any obligations on the Excess Carriers until the limits of the primary policy have been fully paid. The excess coverage policies state, in relevant part, that the excess insurers liability "attaches only after . . . [t]he Company(ies) providing Underlying Insurance has paid the full amount of their respective liability." Dkt. 54-3 at 10; Dkt. 59-3 at 12. Given this plain and unambiguous contractual language, Royal Hospitality is forced to acknowledge that the relevant insurance policies "do[] not impose liability on [the Excess Carriers] until the Primary Policy is exhausted." Dkt. 63 at 3.

4

"In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). It is axiomatic that the core element of a breach of contract claim is an actual breach. As the Excess Carriers rightly point out: "A plaintiff cannot maintain a breach of contract cause of action when the plaintiff readily admits there has been no breach to date." Dkt. 64 at 5 (citing *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 244 (5th Cir. 2015) (holding that a plaintiff could not "state a plausible breach of contract claim" where he "failed to allege the manner in which [defendant] breached")). Because Royal Hospitality acknowledges that the Excess Carriers have no current liability under the insurance contracts, Royal Hospitality cannot maintain a breach of contract action against the Excess Carriers.

The relevant case law fully supports this conclusion. As the Fifth Circuit has observed, it is well-settled that "Texas law dictates that primary policies' limits must be exhausted before excess insurers become liable." *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 209 (5th Cir. 1996). *See also Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, No. H-05-3252, 2008 WL 11389426, at *18 (S.D. Tex. Aug. 29, 2008) (stating the general rule that "all primary policies must be exhausted before excess policies become liable") (citation omitted); *Scottsdale Ins. Co. v. Knox Park Const., Inc.*, No. 3:01CV1852K, 2005 WL 1630038, at *2 (N.D. Tex. July 6, 2005) ("Texas case law is clear

5

that all primary policies must be exhausted before excess policies become liable.") (citation omitted).

To support the argument that Royal Hospitality cannot maintain a breach of contract action against them when it is undisputed that the primary policy has not been exhausted, the Excess Carriers point to *Enron Creditors Recovery Corp. v. St. Paul Fire & Marine Ins. Co.*, No. H-06-3905, 2008 WL 11389422 (S.D. Tex. Aug. 12, 2008). In that case, Enron filed suit against its primary insurer and an excess carrier, seeking to recover losses it sustained as a result of theft committed by two former Enron employees. Like this case, Enron brought claims against the excess carrier for breach of contract and violations of unfair settlement practices under the Texas Insurance Code. The excess carrier argued that its contractual-based duties did not take effect until after the primary policy had been exhausted. The district court agreed. "In light of the prevailing law and the standard practice in the insurance industry, Enron's contention that its mere assertion of a claim in excess of the primary policy limits triggers the excess coverage is simply untenable." *Id.* at *7. "[B]efore an insured is entitled to recover against an excess carrier . . . the insured must prove that the underlying insurers' obligations to pay have been finally determined or established." *Id.* at *6. Because the underlying insurance policy had not been exhausted, the district court held that the excess carrier's contractual duties to Enron had yet to be triggered. In many respects, *Enron* is unremarkable. It simply restates the longstanding rule that "each underlying policy must be exhausted before the next layer of excess insurance is required to contribute." *Id.* This rule makes perfect sense when one considers the purpose behind excess insurance coverage:

> Primary insurance coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability. An excess policy is one that provides that the insurer is liable for the excess above and beyond that which may be collected on primary insurance. In a situation in which there are primary and excess insurance coverages, the limits of the primary insurance must be exhausted before the primary carrier has a right to require the excess carrier to contribute to a settlement. In such a situation, the various insurance companies are not covering the same risk; rather, they are covering separate and clearly defined layers of risk. The remote position of an excess insurer thus greatly reduces its chance of exposure to a loss. This reduced risk is generally reflected in the cost of the excess policy.

*Union Indem. Ins. Co. of N.Y. v. Certain Underwriters at Lloyd's*, 614 F. Supp. 1015, 1017 (S.D. Tex. 1985) (citations omitted).

In opposing the dismissal motions, Royal Hospitality claims that it must file suit against the Excess Carriers at this time because the policy language requires Royal Hospitality to file suit against the Excess Carriers within a specified time period. If it does not assert its breach of contract claim now, Royal Hospitality argues, any such claim will be time-barred. In response, the Excess Carriers deride Royal Hospitality's position, noting that the limitations period for bringing a breach of contract cause of action does not begin until a party fails to perform a duty required by the contract. Since the primary policy has yet to be exhausted, the Excess Carriers maintain that no breach of contract has accrued against them. I agree. Nonetheless, to put this issue to rest, the Excess Carriers have stipulated—both in their motion to dismiss papers and at oral argument—that the limitations period for Royal Hospitality to bring a breach of contract action against them does not begin to run until the primary policy is exhausted. This stipulation resolves any

uncertainty and preserves Royal Hospitality's right to pursue a breach of contract action against the Excess Carriers if the primary policy limits are exhausted.

One last note. At oral argument, Royal Hospitality took the position, for the first time, that from a convenience standpoint, it should be permitted to bring claims against the primary insurer and Excess Carriers at the same time. Royal Hospitality's basic argument is this: Forcing Royal Hospitality to wait to bring a separate lawsuit against each excess carrier until the carrier before it has exhausted its policy limits will unnecessarily delay the proceedings. Wouldn't it be much easier, Royal Hospitality asks, to allow one lawsuit to proceed against all the insurance companies involved and let the parties simply figure it out as the case unfolds? The core problem with Royal Hospitality's argument is that it flatly ignores the Constitution's Article III requirement that an actual case or controversy must exist at all stages of federal court proceedings. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.") (internal quotation marks, brackets, and citation omitted). To have standing to litigate in federal courts, Royal Hospitality must show that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547 (citation omitted). In short, federal courts are to decide specific issues for parties with real disputes. Royal Hospitality cannot file a case against the Excess Carriers when there is no actual dispute between the parties in the hopes that one day in the not-so-distant future there might be a real, live case or controversy.

To summarize, the Excess Carriers' contractual duty to pay Royal Hospitality for any damages sustained as a result of Hurricane Harvey has yet to be triggered because the primary policy has yet to be exhausted. Accordingly, Royal Hospitality's breach of contract claim must be dismissed.

**B.      Extra-Contractual Claims**

In addition to a breach of contract claim, Plaintiff's Original Complaint asserts various extra-contractual causes of action. These include claimed violations of Texas Insurance Code § 542 (Prompt Payment), and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act for unfair settlement practices and misrepresentations.

In its response brief, Royal Hospitality conceded that its extra-contractual claims "have not yet accrued but submits that they may accrue if and when the [primary] Policy is exhausted." Dkt. 63 at 7. Recognizing that the extra-contractual claims are not yet viable, Royal Hospitality asked the Court to dismiss the claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

At oral argument, Royal Hospitality's counsel abruptly reversed positions and stated that, despite the position advanced in its response brief, Royal Hospitality wanted to continue to pursue the extra-contractual claims against the Excess Carriers. There is simply no merit in such an argument. Royal Hospitality cannot pursue its extra-contractual claims for the same reasons its breach of contract claim fails—the primary policy has not been exhausted. *See Enron*, 2008 WL 11389422 at *8 (finding that an excess carrier does not owe extra-contractual duties until the underlying coverage is exhausted); *Keck, Mahin &*

9

*Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 701 (Tex. 2000) ("An excess insurer owes its insured a duty to accept reasonable settlements, but that duty is also not typically invoked until the primary insurer has tendered its policy limits.") (citation omitted); *Gen. Star Indem. Co. v. Spring Creek Vill. Apartments Phase V, Inc.*, 152 S.W.3d 733, 738 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("Texas law does not impose a duty of good faith and fair dealing on an excess carrier"). To be clear, Royal Hospitality's extra-contractual claims should be dismissed.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that Defendant Hallmark Specialty Insurance Company's Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment (Dkt. 54) and Defendant AXIS Corporate Capital UK Limited, Successor in Interest to Novae Group PLC's Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment (Dkt. 59) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 20th day of August, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE